*Navarro Carrillo v. N.Y.C. Dep't of Educ.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 1st day of May, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> MYRNA PÉREZ,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*.

_____

MARIA NAVARRO CARRILLO, JOSE GARZON,[*]

> *Plaintiffs-Appellants*,

> v.                                            No. 21-2639

NEW YORK CITY DEPARTMENT OF EDUCATION,
CHANCELLOR DAVID C. BANKS,

> *Defendants-Appellees*,

NEW YORK STATE EDUCATION DEPARTMENT,

_____

[*] The Clerk of Court is respectfully directed to amend the caption of the case in two ways: first, to reflect the correct spelling of "Carrillo"; and second, to substitute David C. Banks for Richard Carranza as Chancellor of the New York City Department of Education pursuant to Federal Rule of Appellate Procedure 43(c)(2).

*Defendant.*

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | RORY J. BELLANTONI, Brain Injury Rights Group, Ltd., New York, NY. |
| **For Defendants-Appellees:** | AMY MCCAMPHILL, Assistant Corporation Counsel (Richard Dearing, Deborah A. Brenner, of counsel, on the brief), for Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

Plaintiffs-appellants, individually and as the parents of minor child M.G., brought this action under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §1400 et seq., alleging that defendants-appellees, the New York City Department of Education and the Chancellor of the New York City Department of Education in his official capacity (referred to collectively as the "DOE"), failed to provide M.G. with a free appropriate public education ("FAPE") for the 2018-2019 school year, as required by the IDEA.

M.G. is a non-verbal and non-ambulatory student with significant disabilities. On March 19, 2018, a Committee on Special

2

Education ("CSE") was convened of educators, service providers, DOE staff, and the appellants, to develop M.G.'s 2018-2019 Individualized Education Program ("IEP"). The IEP classified M.G.'s disability as "multiple disabilities," assigned special education programs and services, and recommended that M.G. be placed in a 12:1:4 classroom,[1] which is the most supportive classroom environment contemplated by the applicable New York regulations. M.G.'s parents objected to the CSE's proposed placement for M.G., provided notice of their intent to unilaterally place M.G. in a private institution, iBRAIN, and filed a due process complaint seeking reimbursement of tuition and other costs

---

[1] This shorthand is used by the parties to refer to a classroom with a maximum of twelve students, at least one licensed special education teacher, and at least four additional teachers or paraprofessionals, that is, at least one additional teacher or paraprofessional for every three students. See DOE Br. at 7; N.Y. Comp. Codes R. & Regs. tit. 8, §200.6(h)(4)(iii). This classroom type is sometimes referred to as a "12:1+(3:1)" classroom. See DOE Br. at 7 n.2. Likewise, the shorthand "6:1:1" refers to a classroom with a maximum of six students, at least one licensed special education teacher, and at least one additional teacher or paraprofessional. See id. at 16. M.G.'s IEP also "recommended a 1:1 full-time health paraprofessional" be provided for M.G. in addition to the classroom staff required by the regulations. App'x at 111.

related to M.G.'s attendance at iBRAIN.[2] After a four-day hearing, an Impartial Hearing Officer ("IHO") issued a thorough Findings of Fact and Decision, ruling that the CSE's proposal did in fact provide M.G. with a FAPE for the 2018-2019 school year. M.G.'s parents administratively appealed that decision; on appeal the State Review Officer ("SRO") issued a detailed thirty-four-page decision finding that the IHO had correctly determined that M.G. was offered a FAPE.

Plaintiffs-appellants filed a complaint in District Court, asking the Court to vacate the SRO's decision and to order reimbursement of tuition and other costs related to M.G.'s attendance at iBRAIN. The District Court affirmed the SRO's decision, denying plaintiffs' motion for summary judgment and granting defendants' cross-motion for summary judgment. Plaintiffs then timely filed this appeal.

---

[2] If parents are dissatisfied with the placement recommended in their child's IEP, they may challenge that placement. The parents may also unilaterally enroll their child in a private school and seek retroactive tuition reimbursement, "at their own financial risk." Ventura de Paulino ex rel. R.P. v. N.Y.C. Dep't of Educ., 959 F.3d 519, 526 (2d Cir. 2020) (citation and quotation marks omitted); see also 20 U.S.C. §1412(a)(10)(C). Under the Burlington-Carter test, parents are reimbursed for tuition only if "(1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement." Ventura de Paulino, 959 F.3d at 526-27 (citation and quotation marks omitted).

4

We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We engage in a "circumscribed de novo review of a district court's grant of summary judgment in the IDEA context because the responsibility for determining whether a challenged IEP will provide a child with a FAPE rests in the first instance with administrative hearing and review officers." M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 138 (2d Cir. 2013) (citation and quotation marks omitted). Federal courts reviewing state administrative proceedings under the IDEA "are required to give 'due weight' to the findings of" those proceedings. Muller ex rel. Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist., 145 F.3d 95, 101 (2d Cir. 1998) (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley ex rel. Rowley, 458 U.S. 176, 206 (1982)). "Requiring the federal courts to defer to the findings of the state administrative proceedings ensures that the federal courts do not impose their view of preferable educational methods upon the States." Id. (citation and quotation marks omitted). "Deference is particularly appropriate when[] ... the state hearing officers' review has been thorough and careful." Walczak

5

v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998).[3]

Appellants argue that M.G.'s IEP incorrectly classified her disability as "multiple disabilities" rather than "traumatic brain injury," leading to inappropriate recommendations for special education programs and services. We agree with the District Court that this is a "red herring." Navarro Carrillo ex rel. M.G. v. Carranza, No. 20CV04639(CM), 2021 WL 4137663, at *15 (S.D.N.Y. Sept. 10, 2021). "Disability classification is used for one and only one purpose: to ascertain whether a child [falls] into one of the 13 categories that render her eligible for special education services." Id. There is no dispute that M.G. is eligible for special education services, so the question before us is whether the special education programs and services offered to M.G. denied her a FAPE.

To assess whether M.G.'s recommended placement in a 12:1:4 classroom denied her a FAPE, we turn to the regulations describing

---

[3] Appellants contend that deference to the administrative officers is not warranted because the dispute "concerns an issue of law; namely, the proper interpretation of the federal statute and its requirements." Mrs. B. ex rel. M.M. v. Milford Bd. of Educ., 103 F.3d 1114, 1122 (2d Cir. 1997). However, this case presents a straightforward question of whether the IEP developed for M.G. provided her a FAPE, in contrast to the cases cited by appellants. See Muller, 145 F.3d at 102 (Deference was not required because the question was interpretation of "the definition of 'emotionally disturbed' set forth in the relevant state and federal regulations."); Mrs. B., 103 F.3d at 1122 (finding usual deference not necessary because the administrative agency's decision was based on an interpretation of law regarding funding for residential treatment).

6

the "Continuum of services[]" New York offers. N.Y. Comp. Codes R. & Regs. tit. 8, §200.6. As required by the IDEA, the New York regulation details how an "appropriate special education[]" should be determined based on each "student's unique needs." Id. §§200.6(a), (a)(2). Section 200.6(h)(4) lists the different special education classroom structures available, describing, as to each such classroom: the student needs accommodated; the maximum number of students; and the minimum number of staff required. Section 200.6(h)(4) provides, as the regulation's title suggests, a continuum of class compositions, with each successive category of classroom increasing the level of support provided.

Section 200.6(h)(4)(ii)(a) provides that a 6:1:1 classroom — appellants' preferred placement — is appropriate for "students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention[.]" Id. §200.6(h)(4)(ii)(a). The 12:1:4 classroom recommended for M.G. is described in §200.6(h)(4)(iii) as appropriate for "students with severe multiple disabilities, whose programs consist primarily of habilitation and treatment[.]" Id. §200.6(h)(4)(iii).

In the continuum of classroom options, the 12:1:4 is the most supportive classroom available. Rochelle Flemister, the supervisor of school psychologists for the New York City Department of Education, testified before the IHO that the 12:1:4 classroom is

7

"the most restrictive[.]" App'x at 521. Ms. Flemister further testified that a 12:1:4 classroom is appropriate for "students that really have a lot of management needs" and that it gives those students "the attention and support that they need[,]" including attending to "whatever their medical needs are in addition to provid[ing] education." Id.

The CSE found, based on M.G.'s individual needs, that M.G. should be placed in a 12:1:4 classroom. The IHO and SRO appropriately considered the options available under §200.6(h)(4) and agreed that a 12:1:4 classroom complied with the IDEA and with New York regulations. The SRO found that the "12:1+4 special class ratio for students with severe multiple disabilities, called for in [§200.6(h)(4)(iii)], is precisely the type of programming that will address this student's unique needs[.]" App'x at 113. The CSE, the IHO, and the SRO all concluded that M.G.'s IEP was "tailored to meet the unique needs of" M.G. Walczak, 142 F.3d at 122.

The District Court found that there "is absolutely no question that M.G. has highly intensive management needs that require a high degree of individualized attention and intervention." Navarro Carrillo, 2021 WL 4137663, at *16. Appellants argue that because M.G. has highly intensive management needs she requires a 6:1:1 classroom, and that it was error for the CSE to place her in a 12:1:4 classroom. But this argument is not supported by the plain

8

language of the regulation. The needs of students described in the subparagraphs of §200.6(h)(4) are not mutually exclusive. M.G. has "highly intensive[]" management needs and "severe multiple disabilities," and receives programming that is focused on "habilitation and treatment[.]" N.Y. Comp. Codes R. & Regs. tit. 8, §§200.6(h)(4)(ii)(a), (iii). The regulation, as noted, describes a continuum of classroom environments, and students, like M.G., whose needs justify placement in a high-support classroom under §200.6(h)(4) would also be expected to have needs sufficient for placement in a lower-support classroom.

The CSE determined based on M.G.'s individual needs that she should be placed in a 12:1:4 classroom. Nothing about the regulation prohibits this. The CSE met its obligation to carefully consider the student's needs, and developed a plan that would provide her with a FAPE; M.G.'s parents' preference for a different placement is not controlling. The IDEA "guarantees ... an appropriate education, not one that provides everything that might be thought desirable by loving parents." Walczak, 142 F.3d at 132 (citation and quotation marks omitted). Therefore, the District Court did not err in upholding the SRO's determination that a 12:1:4 classroom would provide M.G. with a FAPE.

Deference to the local decision-makers "is particularly appropriate" in this case because both the IHO and SRO issued "thorough and careful[]" decisions agreeing that the IEP offered

9

M.G. a FAPE for the 2018-2019 school year. Id. at 129. We must always be "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." Id. (citation and quotation marks omitted). Applying these standards, the District Court properly affirmed the SRO's decision. The Court observed that the "SRO, like the IHO before him, concluded that the child suffered from so many different disabilities that her needs were best served by being in the 12:1+4 classroom. And [the SRO] specifically found that the presence of additional adults in the classroom was most likely to provide precisely the type of programming that will address this student's unique needs." Navarro Carrillo, 2021 WL 4137663, at *17 (citation and quotation marks omitted). We find no error in this conclusion.[4]

---

[4] To the extent appellants contend that M.G.'s IEP was procedurally inadequate because the CSE improperly "predetermined" the outcome, the record does not support such a contention. Appellants' Br. at 43. "Predetermination is inconsistent with the goals of the IDEA, which envision a collaborative process in developing a uniquely suitable educational placement for each child. ... However, where a Parent has actively and meaningfully participated in the development of an IEP, courts have rejected predetermination claims." E.H. ex rel. M.K. v. N.Y.C. Dep't of Educ., 164 F. Supp. 3d 539, 551 (S.D.N.Y. 2016). The March 2018 meeting, in which appellants participated, lasted nearly three hours, and the IEP expressly noted appellants' concerns regarding the class placement. See App'x at 99, 1277. As the District Court observed, "the record actually suggests that it was the parents, not the district, who lacked an open mind about the process." Navarro Carrillo, 2021 WL 4137663, at *12.

Appellants also argue that the District Court improperly denied their motion for reconsideration. "We review a district court's denial of a motion for reconsideration for abuse of discretion." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013). "A court abuses its discretion when (1) its decision rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found with[in] the range of permissible decisions." Id. (citation and quotation marks omitted). The District Court was not required to reconsider its decision in light of IEPs, IHO decisions, and SRO decisions from school years other than 2018–2019, because they are not determinative of the adequacy of M.G.'s 2018–2019 IEP. See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 67 (2d Cir. 2000); see also J.R. ex rel. J.R. v. N.Y.C. Dep't of Educ., 748 F. App'x 382, 386 (2d Cir. 2018). Thus, the District Court did not abuse its discretion by denying appellants' motion for reconsideration.

We have considered appellants' remaining arguments and find them to be without merit.[5] Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[5] We need not reach the question of which party at the District Court level bears the burden of persuasion at Prong I of the Burlington-Carter test. See M.W., 725 F.3d at 135. This question would become significant only "if the evidence was in equipoise[,]" which it was not in this case. Id. at 135 n.1 (citation and quotation marks omitted).

12